IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| HIEN THAI, <br><br> Petitioner, <br><br> v. <br><br> MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; TODD BLANCHE, in his official capacity as Acting United States Attorney General; TODD LYONS, in his official capacity as Acting Director of United States Immigration and Customs Enforcement; DAVID EASTERWOOD, in his official capacity as St. Paul Field Office Director; and, KEVIN SCHNEIDER, in his official capacity as Polk County Sheriff, <br><br> Respondents. | **No. 4:26-cv-00181-RGE-WPK** <br><br><br> **ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS** |

## I.    INTRODUCTION

Petitioner Hien Thai commences this action against Respondents Markwayne Mullin, in his official capacity as Secretary of the Department of Homeland Security; Todd Blanche, in his official capacity as Acting United States Attorney General; Todd Lyons, in his official capacity as Acting Director of United States Immigration and Customs Enforcement; David Easterbrook, in his official capacity as St. Paul Field Office Director; and Kevin Schneider, in his official capacity as Polk County Sheriff. Pet. Writ Habeas Corpus, ECF No. 1. In this habeas corpus petition, Thai alleges he was arrested and is being detained by Respondents in violation of his constitutional right to due process. *Id.* ¶ 2.

After an evidentiary hearing and a full review of the record as a whole, the Court concludes Thai is being detained unlawfully and grants his petition for a writ of habeas corpus.

## II.    BACKGROUND

### A.    Procedural Background

Thai filed a petition for writ of habeas corpus on April 22, 2026, and filed a motion for a temporary restraining order seeking to stop Respondents from removing him from the district the same day. ECF No. 1; Pet'r's Mot. TRO, ECF No. 2. The Court issued a show cause order requiring Respondents to show cause why Thai was not being unlawfully detained by May 8, 2026, and required Thai to be kept in the jurisdiction during the pendency of this matter. Order, ECF No. 8. Federal Respondents—Mullin, Blanche, Lyons, and Easterwood—filed their response on May 6, 2026. Fed. Resp'ts' Resp. Pet. Habeas Corpus, ECF No. 10. Federal Respondents' response included four attachments. ECF Nos. 10-1–10-4. State Respondent—Schneider—also filed a response. State Resp't's Resp. Order Show Cause, ECF No. 9. Thai replied. Pet'r's Reply Supp. Pet. Habeas Corpus, ECF No. 11.

The Court set an evidentiary hearing for June 2, 2026, and required exhibit and witness lists be submitted by May 28, 2026. Text Order, ECF No. 12; Text Order, ECF No. 13. Federal Respondents submitted their witness and exhibit list on May 28, 2026, which included eight proposed exhibits. Fed. Resp'ts' Exhibit List & Witness List, ECF No. 16. Thai filed his witness and exhibit list on the same day. Pet'r's Exhibit List, ECF No. 17; Pet'r's Witness List, ECF No. 18. Federal Respondents then filed an amended exhibit list proposing two additional exhibits on June 2, 2026, hours before the evidentiary hearing was set to begin. Fed. Resp'ts' Am. Exhibit List, ECF No. 19.

The Court held the evidentiary hearing on June 2, 2026. Hr'g Mins., ECF No. 20. While a transcript is not available for the hearing, the Court recalls the testimony and relies on the facts presented in the testimony as set forth below. Counsel for Federal and State Respondents appeared as well as counsel for Thai. Counsel for State Respondent stated Schneider took no position on the

matter. At the hearing, the Court admitted into evidence all of Thai's exhibits without objection. Federal Respondents' original eight exhibits, Exhibits A–H, were also admitted into evidence without objection. Thai objected to the Federal Respondents' late-filed Exhibits—I and J—and sought to conduct voir dire prior to admission. After Petitioner's voir dire and inquiry from the Court, Federal Respondents withdrew Exhibit I. Exhibit J was admitted. Federal Respondents called two witnesses, ICE Officers Jason Palmer and Jarrett Venters. Thai testified in support of his petition.

### B.    Factual Background

The Court briefly summarizes the uncontested facts relevant to Thai's habeas petition. Thai is a native and citizen of Vietnam. ECF No. 1 ¶ 3. He entered the United States in 1992, and became a lawful permanent resident. *Id.* Thai was convicted of terrorism and murder in the second degree in Polk County, Iowa. *Id.* ¶ 4; *see State v. Thai*, 575 N.W.2d 521, 523 (Iowa Ct. App. 1997). As a result, Thai was ordered removed from the United States and received his final order of removal on September 10, 2003. ECF No. 1 ¶ 5. Thai completed his Iowa state sentence on March 21, 2013, and ICE subsequently took custody of him to await deportation. *Id.* ¶ 6. ICE released Thai after ninety days and placed him on an order of supervision because his removal to Vietnam was not significantly likely in the reasonably foreseeable future. *Id.* ¶¶ 7–9. Thai was redetained on January 15, 2026, and he remains detained in the Polk County Jail in Des Moines, Iowa. *Id.* ¶¶ 12, 16.

The Court next turns to its factual findings resulting from the evidentiary hearing. The Court is informed by the Federal Rules of Evidence and the parties' objections when assessing the admissibility and persuasive weight of the evidence. *See* Fed. R. Evid. 402, 403, 602, 802. In addition, "[w]here drawn in whole or in part from a witness's testimony, the Court's findings reflect credibility determinations based on its assessment of the witness's demeanor, bias, and the

extent to which the testimony was inherently logical and consistent with other evidence." *Funes v. Francis*, 810 F. Supp. 3d 472, 477 (S.D.N.Y. 2025) (making factual findings in a similar immigration habeas corpus context).

The Government[1] first called Palmer to testify. Palmer testified to his role in the initial targeting and redetention of Thai. Palmer testified that Thai was targeted because of his previous criminal background and because a division of ICE—Refugee and International Operations (RIO)—indicated Vietnam was issuing travel documents. Counsel for the Government clarified this reference to Vietnam issuing travel documents was not in reference to Thai specifically but was instead a general statement regarding Vietnam issuing travel documents in other removals. Palmer testified Thai was targeted for redetention under "Operation Lares" under which ICE provided a "targeting list" of individuals with a final order of removal who had previously been convicted of one of several serious offenses. Palmer testified he received the targeting list on January 11, 2026.

Palmer then testified to the events surrounding Thai's redetention on January 15, 2026. Palmer testified that he and other ICE officers followed Thai as he dropped his child off at school. Palmer testified Thai was detained after a traffic stop as he drove back towards his house. Palmer testified that he was personally involved in Thai's processing.

Palmer testified that on January 15, 2026, he provided Thai an unsigned copy of the Government's proposed Exhibit I, which is titled "Notice of Revocation of Release." Fed. Resp'ts' Ex. I, ECF No. 19-1. Palmer further testified he orally informed Thai of the reason for revocation of his release. Thai testified he did not receive a written notice of revocation when he was detained. Thai further testified he did not recall being informed of the reason for detention. Venters testified

---

[1] The Court refers to all Federal Respondents—Mullin, Blanche, Lyons, and Easterwood—collectively as "the Government."

he did not note any separate written notice of revocation in Thai's "alien file" when reviewing the file in preparation for litigation, and he provided relevant documents to the U.S. Attorney's office at that time.

### 1. Written notice of revocation

The Court first determines whether Thai was provided with written notice of the reasons for revocation of his release on supervision prior to an informal interview. The Government's proposed Exhibit I, the revocation notice, is dated January 16, 2026, and was signed by Samuel J Olson, ICE Field Office Director, on January 16, 2026. *Id.* Palmer testified the notice document was created on January 15, 2026, but was not included in the written materials accompanying the completed proof of service documentation in Exhibit H because the notice had to be sent to another ICE official for signature. Fed. Resp'ts' Ex. H, ECF No. 16-8. The "proof of service" page accompanying the notice in proposed Exhibit I is entirely blank. ECF No. 19-1 at 2. Palmer testified that another ICE officer provided Thai with the signed notice at the Polk County Jail on January 16, 2026. Palmer testified he never received a copy of the notice letter that included documentation showing Thai had received the revocation notice and he is unaware of any other record showing Thai received the document.

Palmer instead asserted Exhibit H, a document containing a signed proof of service and notice of informal interview, was missing a page and the notice was part of what was given to Thai on January 15, 2026. Resp't's Ex. H, ECF No. 16-8. The "proof of service" page of Exhibit H makes no reference to the notice contained in proposed Exhibit I. *Id.* In addition, Petitioner's Exhibit 7 is identical to Government's Exhibit H, but Exhibit H is missing the pagination the Government included in an earlier attachment, and that is readily apparent in Exhibit 7. ECF No. 10-3; Pet'r's Ex. 7, ECF No. 17-7. The original pagination makes clear the U.S. Attorney's Office received and produced a two-page document now in evidence as Exhibit H. Exhibit 7 shows

the document says "page 1 of 2" on the "proof of service" page and "page 2 of 2" on the "informal interview" page. There is no missing page in these documents which would suggest or indicate the notice page had ever been attached.

Further, Venters testified he reviewed Thai's "alien file," which Venters explained details everything involving an individual's immigration history as well as DHS records generated by other deportation officers, and testified he produced the relevant documents to the U.S. Attorney's office in April. Proposed Exhibit I was not within the documents submitted by the U.S. Attorney's office in its response to the Court's show cause order, nor was it timely submitted by the Court's deadline for the evidentiary hearing.

The prospective language in the notice document is also at odds with Palmer's testimony that the notice was given contemporaneous to an informal interview. Proposed Exhibit I states Thai "will promptly be afforded an informal interview at which [Thai] will be given an opportunity to respond to the reasons for the revocation." ECF No. 19-1 at 1. Palmer acknowledged no other interview took place other than the interaction Palmer had with Thai the morning of January 15, 2026. Thai testified he had never seen the notice document prior to being shown it at the hearing and never signed a proof of service document in relation to the notice document. Palmer proffered no justification for the temporal discrepancy between the alleged written notice referring to a future interview and his assertion that the notice was given contemporaneous with the interview.

Counsel for Thai objected to the introduction of proposed Exhibit I, the notice document, arguing there is no evidence the document was created on January 15, 2026, nor is there any evidence Thai received the written notice on that date. When questioned by counsel for Thai regarding the authenticity of the notice, Palmer testified he was unaware of any metadata which showed the document was created on January 15. The Court initially held the document in abeyance and afforded the Government an opportunity to present corroborating evidence regarding

the authenticity of the document such as email correspondence between Palmer and the supervisor whose signature appears on the form. The Government instead withdrew proposed Exhibit I. Counsel for Thai did not object to the withdrawal and proposed Exhibit I was excluded from evidence. Palmer's testimony is the only remaining evidence the Government relies upon to support the assertion that Thai was provided with written notice prior to an informal interview. For the reasons set forth below, the Court finds Palmer's testimony as to providing the notice not credible.

Palmer's testimony as to Thai receiving written notice prior to an informal interview on the morning of January 15, 2026, is both illogical and contrary to other evidence in the record. *Cf. Funes*, 810 F. Supp. 3d at 477. Thai credibly testified he never saw a notice document. Venters testified he reviewed Thai's "alien file" containing Thai's immigration history prior to preparing his declaration on April 30, 2026. Venters testified he had seen a written revocation notice document and believes he turned such a document over to the U.S. Attorney's office in April. Venters's April 30 declaration makes no mention of any written notice of revocation being prepared or provided to Thai. Venters testified that his declaration indeed makes no mention of any written notice being provided to Thai prior to an informal interview. Counsel for the Government represented to the Court that he did not receive the notice document—withdrawn proposed Exhibit I—until June 1, 2026, at which point he promptly produced it to Petitioner. When pressed by counsel for Thai as to why the notice document was not filed with the Court until the morning of the hearing, Palmer testified his supervisor only provided it on June 1, 2026.

Government's Exhibit E is a "Form I-213," which Palmer testified is a report of arrest which documents his activity on January 15, 2026. Fed. Resp'ts' Ex. E, ECF No. 16-5. The document is signed by Palmer on all three pages. The third page of the document states Officer Staudinger, the other officer identified in the report as having detained Thai with Palmer, provided

Thai with several documents. *Id.* at 3. It states, "Officer Staudinger provided [Thai] a list of Free Legal Service Providers, the Online Detainee Locator System Privacy Notice, National Detainee Handbook, and Sexual Assault Awareness brochure." *Id.* The report makes no mention of Thai receiving any written notice of revocation or that such a written notice was created.

The Government's brief in response to Thai's petition, filed in May, makes no mention of any written notice and indicates the Government believed the informal interview is what constituted adequate notice. ECF No. 10 at 4. The brief stated "the record indicates that an 'informal interview' was conducted upon the revocation of Thai's supervision (Decl. ¶ 20), thus indicating that Thai was informed of the reason for his detention. This is confirmed by the written communication dated April 12, 2026." *Id.* The Government's original representation was therefore that the interview constituted notice, not that Thai had received an unsigned copy of written notice on January 15, 2026, as Palmer testified.

Furthermore, both Thai's and Venters's testimony contradicts Palmer's assertions regarding a written notice document being prepared on or before January 15, 2026, and given to Thai prior to an informal interview. Thai testified he never received written notice and did not recognize proposed Exhibit I. Venters testified he reviewed Thai's "alien file" in preparing his declaration and produced the relevant documents to the U.S. Attorney's Office in April. Venters's April 30 declaration makes no mention of a written notice document being prepared or provided and Venters testified he believes that in April he produced to the U.S. Attorney's Office all documents which addressed the reasons for Thai's revocation.

There is also no documented proof of service in the record or in the withdrawn proposed Exhibit I that Thai received the purported written notice of revocation. While Palmer testified a signed copy of the written notice was served on Thai at the Polk County Jail on January 16, 2026, by an unidentified ICE officer, Venters's declaration makes no mention of service or of an ICE

8

officer taking such action on January 16, 2026, or any other day. No documented proof of service for the purported written notice of revocation was included in response to the Court's show cause order, the Government's brief in response to Thai's petition, or in the exhibits submitted prior to the evidentiary hearing, even the untimely ones.

Because no other evidence in the record indicates Thai received a written notice of revocation on January 15, 2026, and the purported notice document was not produced either in response to the Court's show cause order or before the deadline set for the evidentiary hearing, the Court finds Thai did not receive written notice prior to an informal interview on January 15, 2026. Palmer's contrary testimony is unreliable and not credible.

### 2.    Reason for release and subsequent redetention

The Court next turns to ICE's justification for releasing Thai on supervision in 2013 and redetaining Thai in January 2026. The Government's brief in response to Thai's petition stated, "Thai violated his release conditions by skipping his December 2025 check-in, which was an express requirement of his order of supervision" such that "ICE therefore was authorized to take him into custody under 8 CFR § 241.13(i)(1)." ECF No. 10 at 4. However, at the evidentiary hearing the Government disavowed this assertion and stated the justification for Thai's redetention in January 2026 was because ICE now believed there was a significant likelihood of removal in the reasonably foreseeable future. Palmer testified that Thai's name was included on a target list because of his previous criminal history but Thai was not redetained until Palmer verified there was a likelihood of removal in the reasonably foreseeable future.

The Government also clarified that Thai was released in 2013 because the Government believed there was no significant likelihood of removal at that time.

Additional facts are set forth below as necessary.

### III.    LEGAL STANDARD

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. §§ 2241(a), (c)(3)). "[T]he writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). The district court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). The district court's habeas jurisdiction also includes challenges to detention by noncitizens. *See id.*; *Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018).

### IV.    DISCUSSION

Thai asserts he is being unlawfully detained because his continued confinement is a violation of his due process rights under *Zadvydas* and because ICE failed to adhere to its own regulations in revoking his release on supervision. *See* ECF No. 1. The Court first discusses the regulatory, statutory, and constitutional limitations on the Government's ability to indefinitely detain individuals subject to a final order of removal and the Government's basis for redetention here, then addresses Thai's *Zadvydas* claim, and finally addresses ICE's failure to comply with its own regulations.[2] The Court then discusses the proper remedy.

#### A.    Redetention

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const.

---

[2] Thai also seeks to prospectively challenge issues related to third-country removal. ECF No. 1 ¶ 2. The Court declines to address this issue as there is no indication the Government is pursuing or intends to pursue third-country removal.

amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Therefore, the Supreme Court "has held that the Due Process Clause protects a[] [noncitizen] subject to a final order of deportation." *Id.* at 693–94 (citing *Wong Wing v. United States,* 163 U.S. 228, 238 (1896)).

Following a final order to remove a noncitizen, 8 U.S.C. § 1231(a)(1) provides "the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A).[3] If the noncitizen is not removed within the ninety-day removal period, the noncitizen "pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). The statute permits detention of a noncitizen beyond the ninety-day removal period where the noncitizen is inadmissible or removable under certain statutory provisions or "has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6). However, even if an exception permitting detention beyond the ninety-day removal period applies, noncitizens may not be held indefinitely. *Zadvydas*, 533 U.S. at 689–90 (noting § 1231(a)(6) "does not permit indefinite detention"). The limitation on indefinite extensions of detention in *Zadvydas* stems from the recognition that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* at 690. Therefore, "[a] statute permitting indefinite detention of a[] [noncitizen] would raise a serious constitutional problem." *Id.*

"The proceedings at issue here are civil, not criminal, and we assume that they are

---

[3] While the relevant statutory provisions use the term "alien," the Court uses the term "noncitizen."

11

nonpunitive in purpose and effect." *Id.* Because civil detention is nonpunitive, detention must be aimed at a particular purpose—removal. Therefore, "where detention's goal is no longer practically attainable, detention no longer bear[s] [a] reasonable relation to the purpose for which the individual [was] committed." *Id.* (alterations in original) (internal quotation marks and citation omitted). "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. *Zadvydas* makes clear detention is presumptively unreasonable and constitutes a violation of the Fifth Amendment when a detainee has been detained for more than six months after the beginning of their removal period and there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* at 701.

The Government's ability to detain, release, and revoke the release of noncitizens subject to final orders of removal is governed by specific regulations which follow the statutory and due process limitations discussed above. Section 241.4 establishes the parameters for the continued detention, release, and revocation of noncitizens beyond the removal period. 8 C.F.R. § 241.4(a). When the Government releases an individual on supervision under § 241.4, any revocation of that release on supervision must comply with the procedural requirements of § 241.4(l)—titled "Revocation of release." 8 C.F.R. § 241.4(l). Section § 241.4(l)(1) permits the Government to revoke an individual's release on supervision but requires the Government to provide notice of the reason for revocation and promptly offer the individual an interview in which they may respond to the asserted reason for revocation. 8 C.F.R. § 241.4(l)(1).

Section § 241.4 makes clear, however, "[t]he custody review procedures in [§ 241.4] do not apply after the Service has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is no significant likelihood that a[] [noncitizen] under a final order of removal can be removed in the reasonably foreseeable future" unless "the Service subsequently determines, because of a change of circumstances, that there is a significant likelihood that the

[noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.4(b)(4).

Furthermore, § 241.4 itself directs the Government to § 241.13 and requires it conduct an evaluation of the foreseeability of removal where the record indicates such removal is unlikely. Section 241.4(i)(7) states if "the record contains[] information providing a substantial reason to believe that the removal of a detained [noncitizen] is not significantly likely in the reasonably foreseeable future, the HQPDU shall treat that as a request for review and initiate the review procedures under § 241.13." 8 C.F.R. § 241.4(i)(7). Therefore, where removal of a noncitizen in the reasonably foreseeable future is unlikely, either because the detained individual makes a showing of such or because the record indicates as such, the regulations direct the Government to § 241.13.

Section 241.13 establishes procedures governing detention, release, and revocation when a noncitizen subject to a final removal order has been "detained under the custody review procedures provided at § 241.4 after the expiration of the removal period" and there is good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. 8 C.F.R. § 241.13(a). Section 241.14 specifies the limited special circumstances which permit the Government to continue to detain noncitizens for whom the Government has determined there is no significant likelihood of removal in the reasonably foreseeable future beyond the expiration of the removal period. 8 C.F.R. § 241.14(a). Taken together, the regulations make clear "[i]f ICE determines that there is no significant likelihood that the noncitizen will be removed in the reasonably foreseeable future, and that no special circumstances justify continued detention, then ICE must release the noncitizen subject to appropriate conditions of supervised release." *Yee S. v. Bondi*, 806 F. Supp. 3d 894, 899 (D. Minn. 2025) (citing 8 C.F.R. § 241.13(g)).

After release because of ICE's determination that removal is unlikely in the reasonably foreseeable future, the redetention of a noncitizen who is subject to an order of supervision is

governed by 8 C.F.R. § 241.13(i). Thus, the procedures set forth in § 241.13 apply for redetention, not those of § 241.4. 8 C.F.R. § 241.4(b)(4). Section 241.13 permits the Government to redetain a noncitizen for two reasons—violation of supervised release or changed circumstances regarding the likelihood of removal. 8 C.F.R. § 241.13(i). Under the latter reason, the Government may redetain a noncitizen "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Such a showing of changed circumstances also subjects a noncitizen "to the custody review procedures under [ ] section [241.4]." 8 C.F.R. § 241.4(b)(4).

With the constitutional, statutory, and regulatory limits placed on the Government in mind, the Court turns to the Government's actions here. The Court first addresses the Government's basis for the revocation of Thai's supervision and his indefinite detention, then turns to the presently argued justification of a reasonable likelihood of removal in the foreseeable future such that *Zadvydas* does not require his release, and finally the Court addresses ICE's failure to comply with its own regulations for revocation of supervision.

### 1.      Properly applicable regulations

While Thai's original detention and release on supervision in 2013 is not at issue here, the Government's actions in 2013 inform what procedures it must adhere to in attempting to revoke Thai's supervision and indefinitely detain him now. *See* 8 C.F.R. § 241.4(l); 8 C.F.R. § 241.13(i).

The record makes clear the Government placed Thai on supervision in 2013 because it was unable to secure travel documents, suggesting removal was not significantly likely in the reasonably foreseeable future. Deportation Officer Venters's declaration states "[Thai] came into ICE custody on April 18, 2013 after serving his sentence. After attempts to obtain a travel document were unsuccessful at that time, Petitioner was released on recognizance on July 19, 2013." Venters Decl. ¶ 17, ECF No. 10-1. Venters testified to those circumstances at the hearing

14

as well. The July 19, 2013, release notification letter provided to Thai, accompanying his placement on supervision, states "ICE will continue to make efforts to obtain your travel document that will allow the United States government to carry out your removal." Fed. Resp'ts' Attachment 2 Supp. Resp. Pet'r's Writ Habeas Corpus 1, ECF No. 10-2. The Government confirmed at the evidentiary hearing that Thai was released on supervision in 2013 because removal was unlikely to occur in the reasonably foreseeable future.

Thai was required to appear at regular check-ins while on supervision. Venters Decl., ECF No. 10-1 ¶ 18. The Government asserts Thai missed a December 2025 check-in; Thai asserts he was unaware of any such check-in and complied with all conditions of supervision throughout his time on supervision. ECF No. 11 at 8; ECF No. 1 ¶¶ 11, 90; Venters Decl., ECF No. 10-1 ¶ 18. At the evidentiary hearing, the Government clarified it now asserts Thai's redetention is justified because of changed circumstances regarding removability, not the alleged missed check-in.

The Government redetained Thai in January 2026. Venters Decl., ECF No. 10-1 ¶ 19. The record contains no written statement informing Thai of ICE's justification for revoking his supervision in January 2026 that was provided to Thai prior to, or at the time of, his redetention. Nor does the record contain a warrant for Thai's January 2026 arrest.

ICE issued a notice titled "Decision to Continue Detention," in April 2026, in which ICE does not discuss Thai's previous release on supervision status nor assert any basis for the revocation of his release. Fed. Resp'ts' Ex. G at 1–2, ECF No. 16-7. The notice instead posits three justifications for indefinite detention, ostensibly grounded in subsections (e), (f), and (g) of § 241.4. *Id.* ICE asserts Thai "ha[s] not demonstrated that, if released, [he] will not pose a risk to public safety," "[Thai] ha[s] not demonstrated that, if released, [he] will not pose a risk of flight," and "ICE is in receipt of or expects to receive the necessary travels documents to effectuate [Thai's] removal, and removal is practicable, likely to occur in the reasonably foreseeable future,

15

and in the public interest." *Id.* The notice asserts "ICE has made such determination based upon [Thai's] outstanding removal order and [his] criminal history." *Id.*

Section 241.13 dictates the required procedures for redetention when a noncitizen has been placed on supervision as a result of there being no significant likelihood of removal in the reasonably foreseeable future. 8 C.F.R. § 241.13. The record makes clear Thai was placed on supervision in 2013 because there was no significant likelihood of Thai's removal in the reasonably foreseeable future, and the Government confirmed as such at the hearing, meaning Thai was placed on supervision pursuant to § 241.13 in 2013. Therefore, revocation of Thai's supervision must adhere to § 241.13(i). 8 C.F.R. § 241.13(b)(1), (i).

Section 241.13(i)(2) permits the Government to revoke supervision when, "on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The Government asserts Thai's indefinite detention is justified because Thai's removal is likely to occur in the reasonably foreseeable future. ECF No. 10 at 3. Although the Government claims it "is in active discussions with the Vietnamese embassy to effect Thai's removal to Vietnam," the testimony at the hearing established no such fact. *Id.* Because the Government attempts to justify Thai's detention under the requirements of § 241.13(i)(2), the Court proceeds to consider whether the Government has made a sufficient showing of changed circumstances demonstrating removal is now likely to occur in the reasonably foreseeable future.

### 2.    Likelihood of removal

The Court considers Thai's claim that the Government has failed to show changed circumstances demonstrating removal is now likely to occur in the reasonably foreseeable future.

Section 241.13(i)(2) requires the Government show changed circumstances demonstrating removal is now likely to occur in the reasonably foreseeable future in order to justify revocation

16

of Thai's supervision and his indefinite detention. 8 C.F.R. § 241.13(i)(2). This requirement is grounded in the due process protections afforded to Thai under the Fifth Amendment because the goal of civil detention must bear some rational relationship to the initial purpose for detention. U.S. Const. amend. V; *Zadvydas*, 533 U.S. at 689–90.

While the Eighth Circuit has not addressed the scope of § 241.13(i), in *Kong v. United States*, the First Circuit found § 241.13(i)(2) required "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." 62 F.4th 608, 619–20 (1st Cir. 2023). The role of a district court is to review ICE's "claim in light of the regulations instructing ICE on how it should make such a determination." *Id.* at 620. "[W]here an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' . . . 'and [ICE] fails to adhere to it, the challenged [action] is invalid.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (second and third alteration in original) (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993)). "8 C.F.R. § 241.13(i)(2) places the burden on the Government 'to establish that "changed circumstances" justified the revocation of release.'" *Phongsavanh v. Williams*, 809 F. Supp. 3d 864, 867 (S.D. Iowa 2025) (quoting *Yee S.*, 806 F. Supp. 3d at 900).

The Government offers scant evidence of changed circumstances here. Venters's testimony at the hearing made clear little progress has been made in effectuating Thai's removal. The Government conceded at the hearing all references made by ICE regarding a likelihood of removing Thai to Vietnam prior to Thai's redetention were based on Vietnam issuing travel documents in unrelated cases. ICE had no individualized basis on which to conclude there was a likelihood of removing Thai to Vietnam at the time ICE decided to redetain him. Venters testified that he did not begin attempting to acquire travel documents for Thai until February 4, 2026. Venters testified he made internal follow-up requests on March 17 and April 29, 2026, regarding

17

Thai's travel documents, but learned no new information. Venters testified that as of May 2026, a U.S. government attaché had received the request for travel documents but Venters did not know if the individual has yet attempted to contact Vietnam.

The record is devoid of any other information regarding the Government's progress in obtaining travel documents or any basis for the assertion the Government is more likely to succeed in obtaining documents now than in 2013. Indeed, in light of the follow-up requests and lack of response, the record indicates the Government has made limited internal progress within its offices in effectuating removal, let alone external progress with Vietnam.

While there is no bright line rule or standard the Government must meet to satisfy its burden of showing changed circumstances indicating removal is now likely to occur in the reasonably foreseeable future, courts have articulated guideposts and made clear what is insufficient to meet the standard. "'General indications that U.S. agencies have been in discussions with [the target country] regarding repatriation efforts do not indicate that those discussions will result in the timely removal of Petitioner, as it is unclear whether those efforts will be successful.'" *Dao v. Bondi*, No. 2:25-CV-02340-LK, 2026 WL 18626, at *4 (W.D. Wash. Jan. 2, 2026) (alteration in original) (quoting *Zhao v. Kelly*, No. CV 17-777-BRO (KES), 2017 WL 1591818, at *4 (C.D. Cal. Apr. 27, 2017)). Moreover, an assertion that travel document requests are pending before officials in a target nation "is merely an assertion of good-faith efforts to secure removal; it does not make removal likely in the reasonably foreseeable future." *Gilali v. Warden of McHenry Cnty. Jail*, No. 19-CV-837, 2019 WL 5191251, at *5 (E.D. Wis. Oct. 15, 2019). Mere intragovernmental effort at removal, with no indication of genuine reciprocal engagement or progress from the target country, is insufficient to demonstrate changed circumstances indicating removal is likely to occur in the reasonably foreseeable future. *See, e.g.*, *Scott*, 796 F. Supp. 3d at 725; *Phongsavanh*, 809 F. Supp. 3d at 869–70; *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 151 (D. Mass. 2025).

18

Thai highlights the difficultly the Government has faced in effectuating removal to Vietnam in similar cases. ECF No. 1 ¶¶ 64–73; ECF No. 11 at 4–5. Thai notes the Government does "not show that they are even receiving a response from the Vietnamese embassy, much less that Vietnam is likely to accept Petitioner." ECF No. 11 at 4. At the hearing, Venters conceded Thai's criminal history is a negative factor which may result in Vietnam refusing to issue travel documents. Venters further conceded he did not have experience successfully removing pre-1995 arrivals, such as Thai, to Vietnam. The Government's failure to present any evidence supporting its conclusion that removal is now likely to occur in the reasonably foreseeable future falls far below the required standard, especially when removal is targeted at a nation, like Vietnam, that has historically been disinclined to cooperate with removal. *See, e.g.*, *Tang v. English*, No. 3:26-CV-203 DRL-SJF, 2026 WL 1214504, at *3 (N.D. Ind. May 4, 2026) (finding no likelihood of removal where the Government "does not explain why efforts to remove [Petitioner] will be successful now when the government's prior efforts were unsuccessful and given Vietnam's history of refusing to repatriate individuals who entered the United States prior to 1995").

Having found the Government has failed to show Thai is likely to be removed in the reasonably foreseeable future—the asserted justification for his detention—the Court turns to the applicable law governing detention absent a showing of removability. The Supreme Court found a six-month period of detention while attempting removal is presumptively reasonable, but continued detention beyond this period requires the Government to assert a valid justification. *Zadvydas*, 533 U.S. at 701. Thai has already been detained for longer than the presumptively reasonable six-month period. Thai was detained for ninety days in 2013 and has now been detained since January 2026, almost five months. ECF No. 1 ¶¶ 6–7, 12. Courts have consistently recognized the presumptively reasonable six-month detention time does not reset when the

Government releases and then redetains an individual. *See, e.g.*, *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721–22 (W.D. Wash. 2025) (collecting cases). The alternative approach would permit de facto indefinite detention without due process. At the hearing, the Government conceded Thai has been detained for longer than is presumptively reasonable. As such, Thai's continued detention is subject to challenge under *Zadvydas*, and the Government may only continue to detain him by showing removal is likely in the reasonably foreseeable future—a burden they have fallen far short of meeting.

Because the Government has failed to meet its burden of showing changed circumstances such that removal is now likely to occur in the reasonably foreseeable future, continued detention of Thai is unlawful under *Zadvydas* unless the Government shows special circumstances justify his continued detention. 533 U.S. at 701.

The Government fails to establish any such special circumstances. While Venters asserts Thai missed a December 2025 check-in, ICE makes no mention of Thai's alleged failure to appear for this check-in in the notice justifying his continued detention. Venters Decl., ECF No. 10-1 ¶ 18. Thai asserts "this is the first time that Petitioner has even heard that he has been accused of failing to check in with ERO" and that he has complied with all conditions of his terms of supervision. ECF No. 11 at 8; ECF No. 1 ¶¶ 11, 90. The Government now asserts it does not seek to justify Thai's continued detention based on this alleged missed check-in.

The notice of continued detention also makes no reference to any of the enumerated special circumstances listed in § 241.14. Ex. G, ECF No. 16-7 at 1–2. Even if ICE sought to base its determination upon § 241.14(f)(1)—permitting detention of individuals convicted of a crime of violence as defined in 18 U.S.C. § 16—such detention is only permitted where the Government also shows "[d]ue to a mental condition or personality disorder and behavior associated with that condition or disorder, the [noncitizen] is likely to engage in acts of violence in the future,"

and "[n]o conditions of release can reasonably be expected to ensure the safety of the public." 8 C.F.R. § 241.14(f)(1)(i)–(iii). This requirement aligns with the Supreme Court's note stating "[i]n cases in which preventive detention is of potentially *indefinite* duration, [the Court has] also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps to create the danger." *Zadvydas*, 533 U.S. at 691 (emphasis in original). The Government has made no such showing and, based upon the record, Thai has had no criminal incidents since his 2013 release on supervision.

Instead, the notice of continued detention asserts ICE determined Thai was a flight risk or danger "based upon [Thai's] outstanding removal order and [ ] criminal history." ECF No. 10-1 at 8. The Court notes both the removal order and criminal history were factors ICE would have weighed when releasing Thai on supervision in 2013.

The Government fails to show that removal is now likely to occur in the reasonably foreseeable future and fails to demonstrate any special circumstances which justify Thai's continued detention. "[W]here detention's goal is no longer practically attainable, detention no longer bear[s][a] reasonable relation to the purpose for which the individual [was] committed." *Zadvydas*, 533 U.S. at 690 (alterations in original) (internal quotation marks and citation omitted). Because the purpose of Thai's detention—removal to Vietnam—is no longer practically attainable in the reasonably foreseeable future, Thai's continued detention is unlawful. *Id.* at 701.

### 3.    Violation of regulations

The Court next turns to the Government's failure to adhere to its own regulations in revoking Thai's supervision and redetention. Government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954). "ICE's failure to follow its own regulations and provide [Thai] with notice or an [adequate] interview violate[s] [his] procedural due process rights." *Zhu v. Genalo,* 798 F. Supp. 3d 400, 414

21

(S.D.N.Y. 2025).

As the Government acknowledged at the hearing, ICE released Thai in 2013 after failing to secure travel documents, suggesting removal was unlikely to occur in the reasonably foreseeable future. While, as the Court notes above, the Government's actions in 2013 indicate the Government proceeded under § 241.13, the record is unclear as to whether the Government was redetaining Thai in 2026 under § 241.4 or § 241.13. At the hearing, the Government asserted ICE was acting pursuant to § 241.4 in redetaining Thai. However, it is immaterial which section applied as § 241.13 imposes substantially similar notice and interview requirements as those found in § 241.4—requirements to which ICE failed to adhere. *See Zhu,* 798 F. Supp. 3d at 414; 8 C.F.R. § 241.4(l); 8 C.F.R. § 241.13(i). The Government acknowledged it was required to provide Thai written notice of the reasons for revocation of his release prior to providing him an opportunity to be heard no matter which regulation it was proceeding under. As the Government contends ICE believed it was proceeding under § 241.4, the Court evaluates its adherence to procedure under the section ICE asserted it was following. *See Zhu,* 798 F. Supp. 3d at 414 n.3.

The Court addresses the procedures the Government was required to follow under § 241.4(l). Section 241.4(l)(1) states a noncitizen

> who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such [noncitizen] who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release or parole. The [noncitizen] will be afforded an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification.

8 C.F.R. § 241.4(l)(1). If ICE was acting under this section, it was required to provide Thai with notice for why his release was revoked and an interview to respond to the asserted reasons for revocation.

An "essential principle of due process" is notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). As discussed above, the Court finds the record does not include any credible evidence a written notice containing the reason for revocation was given to Thai prior to or at the time of his redetention. Venters's declaration states, "[o]n January 15, 2025, an informal interview was conducted upon the revocation of [Thai]'s revocation of order of supervision." Venters Decl., ECF No. 10-1 ¶ 20. The declaration then states, "[o]n April 12, 2026, petitioner was served with decision to continue detention." *Id.* ¶ 24. Venters testified to the same.

The Government provides a document signed by Thai stating an interview took place. Fed. Resp'ts' Ex. H at 2, ECF No. 16-8. In this document, the section where Thai's oral response was to be recorded is left blank. *Id.* The interviewing officer, Palmer, testified Thai also did not provide a written statement. *Id.* Thai testified that he does not recall any informal interview and testified he never received a written notice of revocation of his release on supervision. Thai also testified Palmer read nothing aloud to him, contrary to Palmer's assertion that he orally informed Thai of the reason for revocation memorialized in a written notice during the interview. Thai also testified he did not know or understand what was happening the day of his redetention. Thai testified he was scared and sat quietly the morning of his redetention. Palmer similarly testified that Thai said nothing during the interview. An interview ostensibly offered as an opportunity to respond to the reason for revocation is meaningless if the reason for revocation is never offered or the interviewee does not understand the nature of the proceeding. *Roble v. Bondi*, 803 F. Supp. 3d 766, 772 (D. Minn. 2025).

Moreover, the interview document stated the interview was provided "in order to afford the [noncitizen] an opportunity to respond to the reasons for revocation of his or her order of supervision stated *in the notification letter.*" Fed. Resp'ts' Ex. H at 2, ECF No. 16-8 (emphasis

added). The Government did not originally attach the notification letter referenced in this document, then filed a notice of revocation on the morning of the evidentiary hearing, and sought to introduce it into evidence at the hearing. Yet, as discussed above, when offered an opportunity to further authenticate the letter, the Government chose instead to withdraw it from evidence. Therefore, the only evidence in the record regarding written notice to Thai before an informal interview is Palmer's testimony, which the Court finds not credible in light of the record overall.

Given the record is devoid of any credible evidence a notification letter was provided prior to an interview, and Thai asserts he never received such a letter, the representation in this interview document that a notification letter was provided prior to the interview is at best inaccurate and at worst deceptive. Furthermore, Palmer testified he told Thai why his supervision was being revoked during the informal interview, not before an interview was offered. Thai testified he was told by an ICE officer to sign the proof of service document regarding the informal interview but was unaware of what was happening. Palmer does not contend a written notice was provided in a manner commensurate with a meaningful opportunity to respond because even under Palmer's telling, the notice was given contemporaneous with the interview, meaning Thai would have no "opportunity to respond to the reasons for revocation" as no time for preparation for such a response existed.

The Government failed to provide any evidence, timely or untimely, of compliance with the requirements of due process. No documentation entered into evidence indicates a written notice of revocation was provided to Thai prior to an informal interview or that such a written notice was generated on January 15, 2026. Venters testified to reviewing Thai's "alien file" prior to compiling his declaration, yet Venters's declaration makes no mention of a written notice. Palmer testified a signed notice of revocation was served to Thai on January 16, 2026, yet no evidence in the record, written or through testimony, corroborates this assertion. The Government's original briefing on

this matter argued the informal interview itself is what provided Thai notice such that the requirements of due process were met, not that any separate written notice of revocation was provided to Thai on January 15, 2026. *See* ECF No. 10 at 4. Given the crucial importance notice serves in protecting due process, the Court would expect evidence of written notice be provided, if any existed, in response to the show cause order or in the Government's reply, yet no such documentation was provided. Until the eve of the evidentiary hearing, there was no suggestion such documentation existed and no other evidence indicates its existence.

These circumstances raise serious concerns about the authenticity of the proposed notice and the Government's actions in submitting such a document to the Court. Because ICE violated its own regulations when it redetained Thai without providing him written notification of the reasons why his supervision was being revoked prior to an informal interview at which he could meaningfully reply to a written justifications for revocation, Thai is entitled to habeas relief.

### B.    Remedy

Because Thai is being unlawfully detained, the Court grants his requested relief of release from custody. *See* ECF No. 1 at 19. State Respondent Kevin Schneider, as "the person having custody of the person detained," is directed to release Thai. 28 U.S.C. § 2243. Federal Respondents are directed to ensure the release of Thai by Schneider. The Court further orders Respondents to release Thai from custody along with any items, including identification documents, he possessed at the time he was detained. *See id.* The Court retains jurisdiction to decide any further violations of law related to Thai's post-removal-period detention and release, including any unlawful conditions of release. *See id.*; *Zadvydas*, 533 U.S. at 688.

### V.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Petitioner Hien Thai's Petition for a Writ of Habeas Corpus,

ECF No. 1, is **GRANTED.** Respondent Kevin Schneider shall release Thai from custody immediately. Federal Respondents shall ensure State Respondent releases Thai from custody immediately. Thai shall be released with any items taken from him at the time of his detention.

**IT IS FURTHER ORDERED** that Federal Respondents shall certify compliance with the Court's order by filing an entry on the docket by June 5, 2026.

**IT IS SO ORDERED**.

Dated this 5th day of June, 2026.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE